# Alabama Northern Railroad Co. v. Methvin.

## Injury to Servant.

(Decided December 18, 1913.   64 South. 175.)

1. *Master and Servant; Injury; Negligence.*—The facts stated and it is held that Whitlock who was in charge of the uncoupling of the cars was negligent in his instructions to plaintiff making the company liable under the Employers' Liability Act.

2. *Damages; Personal Injury; Latitude.*—Where there is no question of punitive damages but recovery is sought for loss of time, decreased earning capacity and mental and physical pain, a too wide latitude in the assessment of damages is given to the jury by an instruction merely that the law leaves the amount of the recovery to their sound discretion to be wisely and impartially exercised upon the testimony in the case, not to exceed the amount sued for.

Appeal from Franklin Circuit Court.

Heard before Hon. C. P. Almon.

Action by W. E. Methvin against the Alabama Northern Railroad Company, for injuries received while in its employment.  Judgment for plaintiff, and defendant appeals.  Reversed and remanded.

Bankhead & Bankhead, for appellant.  The oral charge was erroneous in authorizing a recovery on neg-

ligence of Whitlock in failing to notify plaintiff that he was going to uncouple the cars, and allowed a too wide range of discretion in the assesment of damages under the complaint in this case.—*Seaboard Mfg. Co. v. Wilson,* 98 Ala. 383. Counsel discuss other assignments of error, but without further citation of authority.

KIRK, CARMICHAEL & RATHER, for appellee. No brief reached the Reporter.

THOMAS, J.—The appellee, who was plaintiff below, was, at the time of the injuries complained of, in the employ of appellant railroad company in the capacity of a brakeman, and at said time, while in the discharge of his duties as such, was on top of a train of freight cars for the purpose of putting on the brakes and setting some of these cars on a side track to which they were being switched at the station of Phil Campbell; and in attempting to pass from the top of one of these cars to the next one, which had been uncoupled from it without his knowledge, and which, just as he reached the opening between the two, was being pulled away by the engine from the car he was on, so that he, not anticipating such a condition, but expecting to step, as he had done, from the car he was on to the next one, was, when he got to the end of the one he was on, and discovered, to his surprise, that the next car was being pulled away from it, unable to recover himself and stop. His only chance therefore, under the circumstances, to avoid walking off the end of the car he was on and thereby falling between the two, was to jump, if he could, to the next car; but it had reached such a distance from him that he failed to reach it by his jump, and as a result fell between the two cars, receiving the severe injuries complained of.

The negligence causing the injury was ascribed in the complaint to the act in uncoupling the cars of plaintiff's fellow servant, one Whitlock, who was in charge of the work of uncoupling the cars that were being switched onto this side track where the accident occurred. The conductor of the train, in the presence of said Whitlock, directed plaintiff to, before the train left, get on top of the cars that were to be switched to the side track and set the brakes, and told Whitlock, in the presence of plaintiff, to do the uncoupling, directing the latter to leave the cars on this siding just as he found the cars that were previously on there. Plaintiff, who did not know how this was, subsequently, before the switching was done, asked Whitlock, who informed him that two were setting north and two south of the public road that crossed this side track. It appears that the track runs north and south and that the said road runs east and west across it. When the switching began, plaintiff took his position on top of the cars for the purpose of setting the brakes as directed. The train of cars was first switched north up the siding, and two cars coupled together were cut off, together, by said Whitlock at the rear of the train and above or north of the said public road crossing; the plaintiff setting the brakes on each and passing on top of them from the one to the other for this purpose. After doing this, he then got down to the ground and, going to the rear end of the train, which had stopped, after being pulled away from the two cars for some distance south in order to leave the opening for the said public road crossing, got up on the rear car of the train, and, after setting the brakes on the rear end of this car, he hurried to the next car to set the brakes on it, assuming, on the information mentioned, that these two south of the road crossing were to be cut off together by Whitlock from the engine, just

as the two north of said crossing had been done by him. When, however, he had reached the end of the car he was on, he discovered that the next car, contrary to his expectation, was being pulled away by the engine, but the discovery was too late, as said, for him to control his momentum and halt; hence, to escape falling, he attempted to jump the distance and to land on the other car that was moving away, but was unsuccessful in the effort and landed, as said, on the ground.

As before stated, Whitlock was directed by the conductor to uncouple and place the cars on the siding in the same position as the ones previously on there without stating what that position was, and Whitlock, who knew, informed plaintiff, who did not know how the previous ones had been setting, and upon plaintiff's request for information with respect thereto, that two were to be placed above and two below the road crossing. As a matter of fact this was true; but, while the two above or north of the road crossing were to be left coupled together, the two below or south of the road crossing were to be left apart or separated from each other by some distance. We are of opinion that Whitlock was negligent in not explaining more fully to plaintiff in this particular; for from the information imparted it would be natural for plaintiff to assume that the two below the crossing were to be left like the two above the crossing had been left, coupled together; and Whitlock was negligent in not imparting to plaintiff more specific information in this particular before uncoupling the two cars below the crossing, and thereby doing an act so obviously dangerous to the safety of the brakeman on top of the cars, who did not know and had not been informed, as Whitlock should have known, that the uncoupling at this point was to be made; and we are of opinion that Whitlock, under the circumstances,

without first imparting such information, was guilty of negligence towards plaintiff in uncoupling the cars, and that defendant was liable to plaintiff therefor under the employers' liability statute. Whitlock, at the time he uncoupled the car, knew that the only information plaintiff had as to how the cars were to be set was that which he had previously imparted to him, which, as seen, was ambiguous and misleading,. and which was certainly well calculated to lead plaintiff to believe that the two cars on the south of the crossing were to be left coupled together, especially so, after Whitlock himself had given an interpretation to the meaning of this information by having left, as he did, the two cars north of the crossing coupled together. A person doing an act as dangerous to the safety of a person in plaintiff's position, when not informed in advance that the act is to be done, as was the act performed by Whitlock in uncoupling the car, should, and is under duty to, give notice to such person, who is likely to be injured without such notice; and this duty is not discharged by an ambiguous and misleading statement on his part to such person with respect thereto which is such as is likely to be misconstrued to his injury by the person to whom it was made.

There was no count predicated on willfulness or wantonness, and no evidence to sustain it if there had been, and hence there was no question of punitive damages in the case. The jury, in fixing the damages, should therefore have been limited to the assessment of such damages as would reasonably compensate the plaintiff for his loss of time from work, his decreased earning capacity, and the mental and physical pain resulting from the injuries received, which were the only damages claimed in the complaint. The court, however, in charging the jury on the subject of damages, charged

them as follows: "If you find for the plaintiff, the law does not fix the amount of his recovery, but leaves it to your sound discretion from the testimony in the case, not to exceed the amount sued for, and this discretion should be wisely and impartially exercised by you." This portion of the oral charge was objected to and excepted to by the defendant, and we are of opinion that its position was well taken. While the law can fix no standards for measuring physical and mental pain, which, of necessity, must be left to the sound judgment of the jury after taking into consideration and weighing the evidence as to the extent of it, yet damages for loss of time from work and for decreased earning capacity resulting from permanent injury are to be measured by certain data which the plaintiff should furnish the jury to that end. We are therefore of opinion that the court erred in the charge quoted, which gave the jury too wide a latitude in the assessment of the damages.—*Seaboard Mfg. Co. v. Woodson,* 98 Ala. 378, 11 South. 733; *So. Ry. Co. v. Howell,* 135 Ala. 647, 34 South. 6; *Reiter-Connolly Mfg. Co. v. Hamlin,* 144 Ala. 219, 220, 40 South. 280. For this error the judgment is reversed.

Reversed and remanded.